JAMES M. THURMAN *v.* W. R. and J. F. JEN-
KINS, Executors, and E. N. DICKSON.

1. MORTGAGE. *Of crop. Merely an executory agreement. When.* A
writing, supposed to be a mortgage, was executed to secure the
payment of money loaned, to be applied in raising a cotton
crop, the mortgagor binds himself "to deliver at maturity of
the crop so much of the same as will, be necessary for the pay-
ment of the sum specified in the writing to the mortgagee; con-
ceding that a valid mortgage of a growing crop may be made,
the Court held this writing to be merely an executory agree-
ment to deliver cotton enough to pay the debt, but no particu-
lar cotton, and remedy upon this instrument would be damages
for the mortgagor's failure to deliver the same.
  Case cited: Sugg *v.* Tillman, 2 Swan, 208.
2. SAME. *Same.* Though it be so expressed upon the face of a writ-
ten instrument, it is not a mortgage where it conveys, no spe-
cific property, and the mortgagee under such circumstances has
no right, either legal or equitable, to the property described,
such as may be enforced against an attaching creditor.
3. SAME. *Same. Fraudulent conveyance.* Where the morgagee pro-
cures the writing to be done, he is chargeable with knowledge
of its contents, and if it recites a false consideration, it is evi-
dence of fraud, and the deed will not stand as security for the
real debt.
  Cases cited: Peacock *v.* Tompkins, Meig's Rep'ts, 317; Hendricks
  *v.* Pardue, 3 Sneed, 191; Thompson *v.* Walker, Nashville, 1873.
4. SAME. *Same. Same.* Where future advances are to be secured,
this should appear upon the face of the deed or mortgage.
  Case cited: McGavock *v.* Gordon, 1 Cold., 265.
5. PRACTICE IN SUPREME COURT. *Remanding cause.* On failure to
make proper party, the Supreme Court will in proper cases in
aid of substantial right, remand to the Chancery Court to make
proper parties.
  Case cited: Saylors *v.* Saylors, 3 Heis., 533.

FROM RUTHERFORD.

Appeal from the Chancery Court. JNO. P. STEELE,
Chancellor.

J. M. Thurman *v.* W. R. and J. F. Jenkins, Ex'rs, *et al.*

RIDLEY & BURTON and E. COOPER for Thurman.

E. A. KEEBLE and EWING & HANCOCK for Jenkins *et al.*

McFARLAND, J., delivered the opinion of the Court.

Thurman filed this bill against Hiram Jenkins and E. N. Dickson. The object was to obtain an injunction to prevent Jenkins from having an attachment or attachments levied on certain cotton, partly unpicked and partly in bales, grown during the year by the defendant, Dickson. Thurman claims the cotton, under a written article, which, on his behalf, it is maintained, is a mortgage. Jenkins was seeking to have the cotton attached under a proceeding instituted for that purpose. Jenkins answered, and resisted the prayer of the bill upon two grounds: First, that the complainant has no valid mortgage; and second, that if the paper be held a mortgage, that it is fraudulent and void.

Before examining these questions, we will first dispose of an objection made by the complainant's counsel, to the right of Jenkins to make any question against complainant's claim.

It is argued that Jenkins has no right in any event to attach the property in the mode he has attempted. It is stated in the bill, and admitted in the answer, that the grounds upon which Jenkins was prosecuting his attachment against Dickson's property was, that Jenkins was the surety of Dickson.

It is argued that, as he has not paid the debt, he has no right to a decree in his favor against Dickson; that he could not prosecute an attachment proceeding against Dickson, except by a bill, making the creditor to which Jenkins stood bound as surety, a party, which it is averred he has not done.

The validity of the attachment proceedings, under which Jenkins was attempting to have the cotton attached, can not be determined in this case. That case is not before us. If any question exists as to the validity of the proceeding, to determine it, we would at least have to have the record of the case before us. It is apparent that no question of that sort was intended to be raised by the pleadings in this case. The attachment is given to a surety by the Statute upon certain grounds. Code, §§ 3455, 3457.

Whether Jenkins was entitled to the writ or not, and whether he took the proper steps to attain it or not, we can not determine, further than to say this record shows that he was the surety of Dickson, and this case seems to have proceeded upon the idea that he had the right to proceed by attachment against Dickson's property, but that as to the particular property, the complainant has a superior right. And besides, we can not say that the objection made, that the creditor was not made a party by Jenkins, is in fact true. The record is before us. The creditor was the executor of Puckett, who had obtained judgment or decree against Dickson and Jenkins for the

debt. The witnesses, in speaking of the attachments which Jenkins caused to be issued, speak of it as a cause in which the executors or Puckett were parties. If, however, they were not parties, and this he admitted to be a valid objection, if made in that case, it might be remedied. See *Saylors* v. *Saylors*, 3 Heis., 533.

We proceed then upon the assumption that the complainant's right to relief must rest upon his showing a claim superior to Jenkins, assuming the latter to stand in the attitude of a surety, prosecuting an attachment under Section 3457 of the Code. The paper under which the complainant claims is as follows:

"Whereas, James M. Thurman has advanced to me two thousand dollars, to be expended in making and maturing for market my crop of cotton, of about ninety acres, now growing on my place, I hereby obligate and bind myself to deliver to said Thurman, or his order, so much of said cotton, when made, as will be sufficient to fully re-imburse him all the money so advanced to me. But this deed or mortgage is made subject, of course, to the rent lien for rent of the owners of said ground. And I further authorize said Thurman to sell, in his discretion, so much of my said cotton crop as may be sufficient to re-imburse him, as soon after market opens as he sees proper, without further notice to me." Dated 7th June, 1866.

This paper was duly registered. The crop of cotton had been planted, and was then growing. It

is conceded that a valid mortgage of a growing crop may be made. The objection to this is, that it does not create any right in the supposed mortgagee, either legal or equitable, to any specific cotton or quantity of cotton. The writing assumes the possibility at least, that the crop will be more than sufficient to pay Thurman. Dickson, therefore, did not agree to deliver to Thurman the whole crop, unconditionally, but only "to deliver to him, or his order, so much of said cotton, when made, as will be sufficient," etc.

Suppose the crop was more than sufficient to pay Thurman, could he select any particular part of the cotton, and have his rights specifically enforced against an attaching creditor? We think not. We do not understand from the record, certainly, whether in fact the cotton raised was more than sufficient to pay Thurman or not. Nor do we think this would control the question. Whether it be a mortgage or not, must be determined from its face. We could not hold it to be a mortgage in one event, and not a mortgage in the other event.

That the paper is styled a mortgage or deed on its face, does not make it so. The parties may have intended to make a mortgage, but they have not used the words necessary to create the right in the supposed mortgagee to any specific property.

We should construe this to be not a mortgage or conveyance, but an executory agreement to deliver to the complainant, on his order, cotton enough

to pay his debt, but no particular cotton. True, it says so much of the cotton raised on Dickson's place, etc., but he does not agree to deliver all, or any particular or aliquot part. His remedy upon this would be damages for Dickson's failure. And we do not say that if this objection was out of the way that the paper would constitute a mortgage.

This case was before the special commission last summer, and that tribunal came to the same conclusion. See opinion, citing *Sugg* v. *Tillman*, 2 Swan. 208. This is fatal to the complainant's case.

· The paper recites upon its face that Thurman had advanced to Dickson $2,000. It is admitted that this was untrue; that in fact, that he had at the time advanced but little more than $1,000; that he afterwards advanced other sums, making in all something more than $1,400. Since the case of *Peacock* v. *Tompkins*, Meig's Rep'ts, 317, it has been held that the recital of a false consideration is evidence of fraud. In the case of *Hendricks* v. *Pardue*, 3 Sneed, 191, in applying this rule, it was held that as that was no evidence of fraud, in fact, the deed might stand as security for the real debt. In *Thompson* v. *Walker*, at the present term, it was held that the creditor not being in any way connected with the execution of the deed, was not charged with the fraud, by reason of the recital, and that the deed might stand as a security

for his real debt, but in the present case the bill shows that the complainant himself procured the execution of the writing, and is, therefore, charged with a knowledge of its recitals, and these recitals being admitted to be false, it would seem to follow that he is charged with the consequence.

The explanation offered in proof does not meet this objection. It is insisted that the agreement was that he should advance $2,000, but this was never done. Where future advancements are to be secured, this should appear upon the face of the deed or mortgage. See *McGavock* v. *Gordon*, 1 Cold., 265.

The ground of fraud is probably, therefore, equally fatal. Decree for defendant.